# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY RICHARD HORNE, | : | CIVIL ACTION NO. **1:13-CV-1214** |
| | : | |
| Plaintiff | : | (Chief Judge Kane) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOHN & JANE DOES | : | |
| OF YORK COUNTY, *et al.*, | : | |
| | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.      Background.

On May, 6, 2013, Plaintiff, Corey Richard Horne, an inmate at the Western Correctional Institution, in Cumberland, Maryland, filed, *pro se,* this civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff filed a 3-page form civil rights Complaint and he attached to it an 8-page typed Complaint.   (Docs. 1 & 1-1).  Plaintiff also filed a 12-page typed brief in support of his Complaint even though no such brief is required.    (Doc. 1-2).  Since Plaintiff's brief  is not a pleading, it will not be considered for present screening purposes.

Named as Defendants are John & Jane Does of York County, Board of Commissioners, Prison Board, York County, Pennsylvania, York County Prison ("YCP") Warden Mary Sabol, Clair Doll, York County District Attorney Thomas Kearney, and the Interstate Agreement Administrator, Camp Hill, PA. (Id.).  Since the Complaint lacked the necessary filing fee or proper forms to proceed *in forma pauperis*, the Court issued a 30-day Administrative Order on May, 10, 2013. (Doc. 5).  In response, on June 3, 2013, Plaintiff filed a proper application to proceed *in forma*

*pauperis.* (Doc. 7).

Although Plaintiff indicates on the face of his instant form Complaint that he filed prior cases dealing with the same facts as alleged in this case, he does not mention his past cases. (Doc. 1, p. 1). Nonetheless, we will take judicial notice of the Plaintiff's prior cases he filed with this Court, namely, Civil Nos. 11-1062 and 11-1378, M.D. Pa. We also take judicial notice of Plaintiff's state court criminal history regarding his cases in the Franklin County Court of Common Pleas and the York County Court of Common Pleas.[1]

Plaintiff pled guilty to armed robbery in Maryland and he was sentenced to 20 years in a Maryland prison in October of 2009. Petitioner was then extradited from Maryland to Franklin County, Pennsylvania, pursuant to the Interstate Agreement on Detainers ("IAD"). After his jury trial in Franklin County on October 14, 2010, where he was found guilty of robbery,[2] Plaintiff was transported to York County, Pennsylvania, to face prosecution on four pending bank robbery charges. Plaintiff's Criminal Docket Numbers from the York County Court were CP-67-CR-0000702-2011, CP-67-CR-0000703-2011, CP-67-CR-0000704-2011, and CP-67-CR-0000706-2011. At that time, he was detained at the York County Prison ("YCP"). The York County bank robbery charges against Plaintiff were dismissed with prejudice by the York County Court of Common Pleas on April 13, 2011. The York County Court found that Plaintiff was not tried within

---

[1]We obtained the Plaintiff's following history from his Franklin County Court of Common Pleas Criminal Docket CP-28-CR-0000737-2010, which we is located at http://ujsportal.pacourts.us/DocketSheets/CP.aspx. We obtained a copy of Plaintiff's Criminal Docket CP-67-CR-0000702-2011 from the York County Court at http://ujsportal.pacourts.us/DocketSheets/CP.aspx.

[2] 18 Pa. C.S.A. 3701 (a)(1)(ii).

the required time period under the IAD by the York County District Attorney's Office after he was extradited to York County. The York County District Attorney's Office appealed the dismissal of Plaintiff's bank robbery charges to the Pennsylvania Superior Court on April 18, 2011. *See* 683 MDA 2011. The York County District Attorney's Office directed YCP to continue custody of Plaintiff while its appeal was pending.

Also, on April 18, 2011, Plaintiff, through his counsel, filed a Motion to Compel in York County Court seeking the District Attorney's Office to release him back to Maryland so that he could continue to serve his Maryland sentence. On April 26, 2011, the York County Court denied Plaintiff's Motion to Compel holding that it lost jurisdiction over Plaintiff's case when the District Attorney's Office appealed the dismissal of the York County charges to the Pennsylvania Superior Court. Further, in the appeal case pending before the Pennsylvania Superior Court, the York County District Attorney's Office filed on April 21, 2011, an Application for Stay of proceedings and to maintain custody of Plaintiff. The Superior Court Docket Sheet indicates that on June 17, 2011, the Superior Court issued an Order directing as follows:

> Upon review of the motion of Appellant, the Commonwealth, to stay proceedings and maintain custody of Appellee, defendant below [Corey Horne], as well as Appellee's answer to the motion to stay proceedings, and noting the trial court's order of April 26, 2011, the Commonwealth's motion is hereby DENIED as moot under Pa.R.A.P. 1701(a) (after an appeal is taken, the trial court may no longer proceed further in the matter). Decision on Appellee's counter-application for relief is hereby DEFERRED to the panel assigned to decide the merits of the appeal.[3]

---

[3]As noted above, we obtained a copy of Plaintiff 's Criminal Docket from the York County Court at http://ujsportal.pacourts.us/DocketSheets/CP.aspx. We obtained a copy of the Docket Sheet in Plaintiff's appeal case, 683 MDA 2011, from the Pennsylvania Superior Court

On February 14, 2012, the Superior Court reversed the dismissal of the York County criminal charges filed against Plaintiff, and remanded the Plaintiff's case back to the Court of Common Pleas for York County.

On April 11, 2012, Plaintiff was convicted of the York County robbery charges, and on June 20, 2012, he was sentenced to a minimum of five years and a maximum of fourteen years incarceration. On June 28, 2012, as a result of that judgment of sentence, Petitioner filed, *pro se*, a direct appeal with the PA Superior Court. On August 20, 2012, the Superior Court dismissed Plaintiff 's appeal for failure to respond, however, his appeal was later reinstated on September 25, 2012, as a result of an error with the Plaintiff's mailing address. On January 4, 2013, the Superior Court granted a motion to appoint Plaintiff with counsel for his appeal. To date, the Superior Court has not yet ruled on Plaintiff 's appeal of his York County judgment of sentence.

In a §2254 habeas petition with this federal Court filed on July 25, 2011, before the Superior Court reversed the dismissal of his York County charges, Plaintiff Horne claimed that his continued detention in YCP was illegal since the York County criminal charges against him were dismissed with prejudice and he sought this federal court to "order a hearing to determine the merits" of his claims.[4] (Civil No. 1:11-CV-1062, M.D. Pa., Doc. 1, p. 3 and Doc. 5, p. 2). Along with his habeas petition, Plaintiff also filed a prior civil rights action under § 1983 with this federal Court, claiming

---

at   http://ujsportal.pacourts.us/DocketSheets/Appellate.aspx.

[4]Plaintiff named as Respondents in his habeas case, Civil No. 1:11-CV-1062, two of the Defendants he names in the instant case, namely, DA Thomas Kearney and YCP Warden Mary Sabol.

4

that his detention in York County Prison was illegal and violated his constitutional rights. (Civil No. 1:11-CV-1378, M.D. Pa.). Thus, Plaintiff basically sought this federal Court to decide if his continued detention in YCP was illegal since the York County criminal charges against him were dismissed with prejudice and if he should be returned to Maryland so that he could finish serving his 20-year sentence there.

On October 24, 2011, we issued a Report & Recommendation, in which we recommended that Plaintiff's prior civil rights Complaint be dismissed with prejudice. (Civil No. 1:11-CV-1378, Doc. 13). On November 22, 2011, the District Court adopted our R&R in full, and dismissed Plaintiff's civil rights Complaint with prejudice. (Civil No. 1:11-CV-1378, Doc. 15). On December 13, 2011, Plaintiff appealed the District Court's Order to the Third Circuit Court of Appeals. On September 28, 2012, the Third Circuit Court of Appeals issued a Judgment affirming the District Court's dismissal of Plaintiff's original civil rights Complaint, and subsequently, the case was closed on October 22, 2012. (Civil No. 1:11-1378, Docs. 36-37). *See Horne v. District Attorney York County*, Fed. Appx. 140 (3d Cir. 2012).

In Plaintiff's habeas petition, Civil No. 1:11-CV-1062, M.D. Pa., the Court adopted our R&R on August 28, 2012, and granted Respondents' Motion to Dismiss and dismissed the case without prejudice.

## II.    Allegations of Complaint, Docs. 1 & 1-1.

In his current §1983 civil rights Complaint filed on May 6, 2013, Plaintiff alleges claims very similar to those raised on his prior habeas petition and civil rights action, the latter case was dismissed and affirmed by the Third Circuit. In fact, much of the present Complaint of Plaintiff

Horne relies primarily upon past facts alleging that the IAD was violated by Defendants. We note, as discussed above, that the dismissal of Plaintiff's York County charges was overturned by the PA Superior Court and that Plaintiff was convicted on the charges and sentenced. Despite this reversal of the dismissal of the York County charges and his conviction, Plaintiff makes no mention of these facts, and premises his instant Complaint upon the grounds that his York County charges were dismissed. In his present Complaint, Plaintiff raises four distinct claims: (1) a claim for false imprisonment; (2) a claim for breach of contract regarding the Interstate Agreement on Detainers; (3) an Eighth and Fourteenth Amendment conditions of confinement claim regarding an alleged contaminated ventilation system at YCP; and (4) an Eighth and Fourteenth Amendment claim regarding YCP's medical screening process and segregation policy with respect to determining if inmates have TB. (Doc. 1-1, pp. 5-9). Plaintiff also raises a municipal liability claim against Defendants York County, Board of Commissioners, Prison Board under *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (Id., p. 10).

Plaintiff states that he exhausted his YCP administrative remedies with respect to his claims. (Id., p. 5).

As relief, Plaintiff seeks compensatory and punitive damages against Defendants.[5] (Id., pp.

---

[5]To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory and punitive damages) against the individual Defendants in their official capacities, we will recommend that these requests for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Also, Plaintiff cannot recover punitive damages against the municipal Defendants. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748 (1981).

3 & 10).

As to his first claim for false imprisonment, Plaintiff alleges that he was wrongfully confined in YCP after his York County charges were initially dismissed with prejudice. Plaintiff avers that, "the above captioned defendants in their failure to properly address & determine the legality & appropriateness of the appellants (sic) detention nor obtain a judicial order of commitment by a court of appropriate jurisdiction does constitute a deliberate choice to follow a course of action or inaction made among various alternative courses." (Doc. 1-1at p. 2). Again, we note that at the time Plaintiff signed his present Complaint on April 29, 2013, his York County charges had been reinstated for over a year (February 14, 2012), and he had been sentenced on those charges for nearly a year (June 20, 2012).

Plaintiff also alleges that the Interstate Agreement on Detainers can be construed as a legal contract between the states of Maryland and Pennsylvania and the Plaintiff. He claims, "the appellant/plaintiff is being injured by his continued custody in the state of Pennsylvania by the deprivation of the right/opportunity to earn industrial & special project credits [gain time] against his Maryland sentence."[6] (Id. at p. 4) As such, Plaintiff seems to allege that by confining him at YCP while the dismissal of his charges there was being appealed by the District Attorney, the York County Defendants prevented him from earning credit for good behavior, which could reduce his Maryland state sentence, violating the IAD, and thus breaching an alleged contract.

---

[6]We take judicial notice of the fact that Plaintiff was transferred from YCP to MRDCC in Baltimore, Maryland, on or around July 16, 2012. He is currently confined at Western Correctional Institution in Cumberland, Maryland. At the time Plaintiff filed this Complaint, therefore, he had been incarcerated in Maryland for almost 10 months.

Insofar as Plaintiff raises a conditions of confinement claim under the Eighth and Fourteenth Amendments, he alleges that he was subjected a ventilation system at YCP which was contaminated by mold and rust bacteria. Plaintiff does not allege that he personally suffered any harm as a result, but states, "[t]e above mentioned has caused an increased number of ear infections, flu like symptoms[,] sore throats to be prevalent among inmates and in all probability could be communicated through the common ductwork to other parts of the building possibly constituting 'sick building syndrome'." (Id. at p. 5). Thus, Plaintiff merely speculates that the alleged contaminated ventilation system at YCP could have caused inmates to suffer from ailments.

Finally, Plaintiff alleges that in December 2011, while confined at YCP he tested positive for exposure to the Tuberculin bacteria, a precursor to Tuberculosis. He further alleges that "had YCP & its medical department had an adequate screening process with a segregation policy pending Tuberculosis screening as required, it would not have been possible that an inmate with active Tuberculosis in a contagious stage could or would expose other inmates in its general population." (Id. at p. 6).

As stated, Plaintiff requests that the court grant him unspecified monetary damages for his alleged unlawful confinement in YCP, along with any further relief the "plaintiff cause may require." (Id., p. 10).

We will now screen Plaintiff's **Documents 1 & 1-1** Complaint as required by the Prison Litigation Reform Act. *See Banks v. County of Allegheny*, 568, F.Supp.2d 579, 587-88 (W.D. Pa. 2008).

III.     **Standards of Review.**

    *A.*    *PLRA*

As stated, the plaintiff filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 6). The Prison Litigation Reform Act of 1995,[7] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

    *B.*    *42 U.S.C. § 1983*

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v.*

---

[7]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

*Doe*, 536 U.S. 273, 284-85 (2002); see *also Holocheck v. Luzerne County Head Start, Inc.*, 385 F.

Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660

(M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007)

("only those who act under color of state law are liable to suit under section 1983."). "In order to

satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state

official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp.

2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged

constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such

personal involvement. *Id*. Each named defendant must be shown, through the complaint's

allegations, to have been personally involved in the events or occurrences upon which Plaintiff's

claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id*. Courts have also

held that an allegation seeking to impose liability on a defendant based on supervisory status,

without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

## C. Motion to Dismiss

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an

entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

## IV.   Discussion.

### *1. Res Judicata*

We find that Plaintiff has previously raised, in part, identical claims in his prior civil rights case, namely in Civil No. 1:11-CV-1378, and thus, we find his instant claims are, in part, barred by *res judicata*. In *Easley v. New Century Mortg. Corp.*, 394 Fed.Appx. 946, 948 (3d Cir. 2010), the Third Circuit Court stated:

In Pennsylvania, [FN3] a claim is barred under *res judicata* if it shares four conditions in common with an earlier claim: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Turner,* 449 F.3d at 548. Easley's CPL [fraud] claim is based on allegations related to her mortgage, including events leading up to its execution, and events leading up to and including the foreclosure. The "thing sued upon" is therefore the same, as are the parties, whose capacities to sue and be sued are not in dispute.

FN3. Federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them. *See Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 887 (3dCir.1997).

As stated above, a claim is barred under res judicata if it shares four conditions in common with an earlier claim. The first and second conditions are if the thing sued upon or for is essentially the same, and if the cause of action is the same. Plaintiff Horne brought a previous case in this Court against the York County District Attorney and Mary Sabol, namely, *Horne v. Kearney*, *et al.*, Civil No. 1:11-CV-1278, under some of the same theories as he raises in his present case. Those theories included claims that Plaintiff's civil rights were violated when the DA refused to release Plaintiff back to Maryland's custody while his appeal regarding his York County charges was pending in the Pennsylvania Superior Court. Also, the parties to Plaintiff 's prior action included two Defendants in the present action, Thomas Kearney and Mary Sabol.

We find that Plaintiff's present§ 1983 action is, in part, essentially the same as his prior § 1983 case that was decided on the merits. On November 22, 2011, in Plaintiff's prior civil rights action, *Horne v. Kearney, et al.*, the District Court (Civil No. 1:11-1378, Doc. 15) adopted our R&R and dismissed the Plaintiff's Complaint with prejudice. In response, the Plaintiff appealed this decision to the Third Circuit Court of Appeals. On September 28, 2012, the Third Circuit affirmed the District Court's dismissal of the Plaintiff's previous civil rights action. (Civil No. 1:11-1378, Doc. 36); *Horne*, 499 Fed. Appx. at 140. Thus, we find Plaintiff's present § 1983 action, to the extent he again raises a false imprisonment claim, is essentially the same as his prior case that was already decided on the merits. As such, we find Plaintiff's present false imprisonment claim under § 1983

should be barred based on the doctrine of res judicata.[8]

2. *Lack of Personal Involvement*

We begin, as above, by taking judicial notice of the fact that Plaintiff attempted to bring a § 1983 false imprisonment claim previously against Defendants Kearney and Sabol in Civil No. 1:11-CV-1378, and that the Third Circuit affirmed the dismissal of that case on the grounds that the Defendants were entitled to immunity. Plaintiff disregards the prior decisions of this Court and of the Third Circuit, however, and again attempts to bring a false imprisonment claim against the same Defendants.

We will reiterate our previous finding that Horne has impermissibly named District Attorney Kearney and Warden Sabol, as Defendants based only on *respondeat superior*. Plaintiff does not aver either Defendant was personally involved in the decision to hold him at YCP or in the proceedings in the York County Court to keep him at YCP pending the Commonwealth's appeal of the dismissal of the York County charges to the PA Superior Court. With respect to DA Kearney and Warden Sabol, we find that Plaintiff merely names them as Defendants based on their supervisory positions. We do not find sufficient allegations about the personal involvement of Defendant Kearney and Defendant Sabol in Plaintiff's present Complaint.

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

---

[8]As discussed below, we also find that Plaintiff's instant false imprisonment claim is *Heck* barred.

14

*supra.* It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants Kearney and Sabol with respect to his constitutional claims, and that Plaintiff has named them based on *respondeat superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*"); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

Therefore, we will recommend that Defendants District Attorney Kearney and Warden Sabol be dismissed with prejudice.[9]   *See Morales v. Beard*, Civil No. 11-0692, M.D. Pa., 2011 WL 2938225 (M.D. Pa. 6-22-11), adopted by 2011 WL 2930985 (M.D. Pa. 7-19-11).

Furthermore, Plaintiff has also failed to allege any personal involvement of Defendants John & Jane Does of York County, Clair Doll, or the unnamed Interstate Agreement Administrator. Plaintiff does not mention any of these Defendants in his form Complaint and attached typed

---

[9]Since we also find that DA Kearney is entitled to prosecutorial immunity and is entitled to absolute immunity regarding Plaintiff's damages claims, and since we also find that Plaintiff fails to state a cognizable constitutional claim, we do not recommend that Plaintiff be given chance to amend his pleading against the two supervisory Defendants,  District Attorney Kearney and Warden Sabol.   Also, as discussed above, we find that Plaintiff 's false imprisonment claim against these two Defendants is barred by res judicata.

Complaint, Docs. 1 & 1-1, aside from naming them initially as Defendants to the action. Therefore, we will also recommend that Defendants John & Jane Does, Clair Doll, and the Interstate Agreement Administrator be dismissed with prejudice. Given that this Court has already dismissed Plaintiff 's Civil No. 1:11-1378 case, and given that Plaintiff has already appealed the dismissal of his similar civil rights action to the Third Circuit, we find futility in allowing him to amend his present Complaint with regards to claims against Defendants John & Jane Does of York County, Clair Doll, and the unnamed Interstate Agreement Administrator.

3. *Prosecutorial Immunity*

We also again find that Defendant DA Kearney is entitled to prosecutorial immunity with respect to Plaintiff's instant claims for damages. As stated, Plaintiff only requests damages in his Complaint. As the Court found in *Williams v. Marino*, Civil No. 03-0632, M.D. Pa., Defendant DA Kearney is entitled prosecutorial immunity with respect to Plaintiff's request for monetary damages as against him. Although Plaintiff does not specify such in his Complaint, we find that Plaintiff Horne's present claims for damages against Defendant DA Kearney are entirely based on DA Kearney's performance of his official duties in prosecuting Plaintiff in York County and in deciding if the Orders of the York County Court dismissing the charges against Plaintiff should be appealed to the Pennsylvania Superior Court. In fact, as stated, the Superior Court reinstated the charges against Plaintiff in York County and Plaintiff was convicted of them. As such, Plaintiff's claims against Defendant DA Kearney are precluded by absolute prosecutorial immunity. *See Stankowski v. Farley*, 487 F. Supp. 2d 543 (M.D. Pa. 2007); *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Radocesky v. Munley*, 247 Fed. Appx. 363, 365 (3d Cir. 2007)("The decision whether or not to

17

initiate or prosecute a case is completely discretionary with prosecutors and also is absolutely

immunized from a suit for damages.")(citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)).

In *Gregg v. Pettit*, 2009 WL 57118, *4 (W. D. Pa.), the Court stated:

> The Third Circuit has held that "[t]he decision to initiate a prosecution is at
> the core of a prosecutor's judicial role. A prosecutor is absolutely
> immune when making this decision, even where he acts without a good
> faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson,* 969
> F.2d 1454, 1463-64 (3d Cir.1992) (citations omitted). Here, Plaintiff's
> allegations contained in the operative complaint are essentially that
> the District Attorney Petit and the Assistant District Attorney Lucas
> "maliciously conspired with all other ... defendants to prosecute, convict and
> execute Plaintiff for a heinous crime he did not commit." Dkt. [8] at 4,
> ¶ 17. Hence, it is clear that these two defendants and the allegations of
> the complaint concerning them come within the shield of absolute
> prosecutorial immunity. *See e.g., Rose v. Bartle,* 871 F.2d 331, 345
> (3d Cir.1989) ("charges that the prosecutors induced witnesses to commit
> perjury are barred by the immunity doctrine") ( *quoting Heidelberg v.
> Hammer,* 577 F.2d 429, 432 (7th Cir.1978); *Jennings v. Shuman,* 567
> F.2d 1213, 1221-22 (3d Cir.1977) (citation omitted) ("[A] prosecutor is
> entitled to absolute immunity 'while performing his official duties' as a
> officer of the court, even if, in the performance of those duties, he is
> motivated by a corrupt or illegal intention."); *Buckley v. Fitzsimmons,* 509
> U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) ("acts undertaken
> by a prosecutor in preparing for the initiation of judicial proceedings or
> for trial" enjoy absolute immunity); *Broam v. Bogan,* 320 F.3d 1023,
> 1030 (9th Cir.2003) ("A prosecutor's decision not to preserve or turn
> over exculpatory material before trial, during trial, or after conviction is
> a violation of due process under *Brady v. Maryland,* 373 U.S. 83, 87, 83
> S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is, nonetheless, an exercise of
> the prosecutorial function and entitles the prosecutor to absolute
> immunity from a civil suit for damages."). Even the allegation of
> conspiracy between the two prosecutor-Defendants and the other
> defendants comes within a prosecutor's absolute immunity. *Dory v. Ryan,*
> 25 F.3d 81, 83 (2d Cir.1994) ("absolute immunity protects a prosecutor
> from § 1983 liability for virtually all acts, regardless of motivation,
> associated with his function as an advocate. This would even include,
> for purposes of this case, allegedly conspiring to present false evidence
> at a criminal trial. The fact that such a conspiracy is certainly not

something that is properly within the role of a prosecutor is immaterial, because '[t]he immunity attaches to his function, not to the manner in which he performed it.' *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986).... As much as the idea of a prosecutor conspiring to falsify evidence disturbs us ... we recognize that there is a greater societal goal in protecting the judicial process by preventing perpetual sui 996 F.2d 617, 628 n. 20 (3d Cir.1993) ("engaging in a conspiracy to maliciously prosecute does not affect prosecutor's absolute immunity from liability for the damages resulting from the malicious prosecution") ( *citing Rose v. Bartle,* 871 F.2d 331, 347 (3d Cir.1989)), *abrogation on other grounds recognized by, Knight v. Poritz,* 157 Fed.Appx. 481, 487 (3d Cir.2005).

*See also Light v. Haws*, 472 F. 3d 74, 77-78 (3d Cir. 2007).

We find that Defendant DA Kearney is absolutely immune from all of Plaintiff's damages claims. It was clearly within Defendant DA Kearney's performance of his official duties to decide to appeal the April 13, 2011 Order of the York County Court dismissing the charges against Plaintiff to the Pennsylvania Superior Court and to then prosecute Plaintiff when the charges were reinstated despite Plaintiff 's claim that the IAD was violated.

In *Light v. Haws*, 472 F. 3d 74, 77-78 (3d Cir. 2007), the Third Circuit stated:

"Most public officials are entitled only to qualified immunity" from Section 1983 actions. *Yarris v. County of Delaware,* 465 F.3d 129, 135 (3d Cir.2006); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (ordinarily, "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted). Nonetheless, in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that, in light of the immunity historically accorded prosecutors at common law, state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. *Id.* at 427, 431, 96 S.Ct. 984. This protection is "not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d

471 (1997) (internal quotation marks and citations omitted). This court has since amplified that "participation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role." *Carter v. City of Philadelphia,* 181 F.3d 339, 356 (3d Cir.1999) (internal quotation marks and citations omitted). We have given as other examples of prosecutorial actions that warrant absolute immunity, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Yarris,* 465 F.3d at 135 (internal quotation marks and citations omitted); *McArdle v. Tronetti,* 961 F.2d 1083, 1085 (3d Cir.1992) (holding that prison physician and prison counselor were absolutely immune as to their testimony in court and psychiatric reports to the judge, as that was an "integral part of the judicial process").

In order to determine if Defendant DA Kearney is entitled to absolute immunity in this case, we must focus on "on the nature of the function [he] performed." *Id.*, at 78. As discussed above, all of Plaintiff's allegations against Defendant DA Kearney related to acts he took in his quasi-judicial function as an advocate for the Commonwealth in prosecuting the York County criminal cases against Plaintiff. Prosecutors, both state and federal, routinely prosecute criminal cases, and this conduct falls squarely within the scope of their official duties. Defendant DA Kearney is an attorney for the Commonwealth, and he is authorized under Pennsylvania law to prosecute criminal cases in York County. *See In re Hickson*, 765 A. 2d 372, 383 (Pa. Super. 2000)("The district attorney is a quasi-judicial officer who represents the Commonwealth.")citing *Com. v. Long*, 392 A. 2d 810, 811 (Pa. Super.1978). Also, the District Attorney is acting within the scope of his official duties in deciding which cases to prosecute. *In re Hickson*, 765 A. 2d at 388(the discretion to act on a criminal complaint remains with the District Attorney)(citations omitted).

Further, the decisions of Defendant DA Kearney as to whether the April 13, 2011 Order of

the York County Court should be appealed and whether Plaintiff should continued to be held in YCP while the appeal was pending were clearly decisions within the scope of his official duties. As such, Defendant DA Kearney is absolutely immune from Plaintiff's §1983 action for damages. *See Arsad v. Means*, 365 Fed. Appx. 327, 329 (3d Cir. 2010); *Wallace v. Powell*, 2009 WL 6850318 (M.D. Pa. 11-20-09). Thus, it is clear from Plaintiff's allegations detailed above that his claims against Defendant DA Kearney all relate to the DA's prosecutorial function, and they were all an integral part of the judicial process.

Since this Defendant is entitled to prosecutorial immunity with respect to these claims, we will recommend that Plaintiff's case be dismissed with prejudice as against Defendant DA Kearney. Based on the above, we find futility in allowing Plaintiff to amend his Complaint as against Defendant DA Kearney.

4. *Failure to State Cognizable Constitutional Claims*

A. *Conditions of Confinement Claims*

We liberally construe Plaintiff's Complaint regarding the ventilation system and the medical screening process at the YCP to raise conditions of confinement claims. Plaintiff's claims arose when he was detained in YCP prior to his trial on the York County criminal charges.

In *Tapp v. Proto*, 718 F.Supp. 2d 598, 616 (E.D. Pa. 2010), the Court stated that since the Plaintiff inmate was a pretrial detainee at the prison, his constitutional claims regarding the conditions of confinement and denial of proper medical care fell under the Fourteenth Amendment Due Process Clause. (citations omitted). Thus, since Plaintiff Horne was a pretrial detainee at YCP during the time his conditions of confinement claims arose, his claims should be examined under

the Fourteenth Amendment's due process standard. *Id.* at 621-22; *Brown v. Deparlos*, 2011 WL 1158289, *4 (M.D. Pa. 3-28-11)(Court held that if Plaintiff inmate was a pretrial detainee, his constitutional claims had to be considered under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment)(citations omitted). As the *Tapp* Court stated, "most Third Circuit decisions analyzing pretrial detainee claims of inadequate medical care have used the Supreme Court's Eighth Amendment rubric set forth in *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285 (1976)."(footnote omitted). 718 F.Supp. 2d at 622; *Brown*, 2011 WL 1158289, *4. Thus, as in *Tapp* and *Brown*, we analyze Plaintiff Horne's Fourteenth Amendment conditions of confinement claims under the Eighth Amendment standard used to evaluate such claims.

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).
>
> To establish an Eighth Amendment claim, Horne must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity.

22

As explained by the  United States Supreme Court:

> Some conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each would
>
> not do so alone, but only when they have a mutually enforcing effect
> that produces the deprivation of a single, identifiable human need such
> as food, warmth, or exercise-for example, a low cell temperature at
> night combined with a failure to issue blankets. To say that some prison
> conditions may interact in this fashion is a far cry from saying that all
> prison conditions are a seamless web for Eighth Amendment purposes.
> Nothing so amorphous as "overall conditions" can rise to the level of
> cruel and unusual punishment when no specific deprivation of single
> human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).
>
> In addition to showing conditions that pose a significant risk of serious
> harm, the inmate must show that the person or persons responsible for
> the conditions of confinement acted with "a sufficiently culpable state
> of mind." *Id. at 298.* As described by the Supreme Court in *Farmer,* the
> standard for determining deliberate indifference in a conditions of
> confinement case is whether a prison official knew of and disregarded
> an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at
> 837. The Court added that "it is enough that the official acted or failed
> to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

*See also Brown v. U.S.*, 2010 WL 936241, *10 (M.D. Pa. March 12, 2010).

To summarize, the Supreme Court has held that when an Eighth  Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation  alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman,*

452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Furthermore, the Third Circuit defined deliberate indifference as "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011). The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on his Complaint, Plaintiff has not stated sufficient facts for the Court to conclude that his conditions of confinement claims should proceed because he has failed to allege: (1) that the deprivation alleged was objectively, sufficiently serious; and (2) that any properly named individual Defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*.

As mentioned above, an objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). The facts of Plaintiff's Complaint allege that he was "required to exist in unhealthy conditions by being subject to a ventilation system in York County Prison and particularly on New South B pod to include thick black mold all over the

ceilings and upper walls ... ." (Doc. 1-1, p. 5). Plaintiff does not allege any personal harm as a result of these conditions, nor does he allege he was deprived of any necessary human needs. He fails to allege that he did not receive sufficient ventilation or air to his cell. Nor does he allege that he became ill due to the stated conditions at YCP. Further, Plaintiff does not aver that he suffered any harm due to the alleged conditions at YCP. These alleged deprivations, therefore, do not amount to the denial of "minimal measures of life's necessities" such as food, water, and shelter. Further, as stated, Plaintiff has not named any proper Defendant, nor any Defendant whatsoever, with respect to his constitutional claims. Therefore, we will recommend that Plaintiff's Eighth Amendment conditions of confinement claims be dismissed with prejudice. Based on the above, we find that allowing Plaintiff leave to amend his pleading as to the stated claim is futile and unduly prejudicial to Defendants. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002) (The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless it would be futile.).

Insofar as Plaintiff attempts to raise a conditions of confinement claim and a denial of proper medical care claim against YCP for improper medical screening of new inmates for TB, we find that he fails to state a cognizable claim. Plaintiff's Complaint, though difficult to comprehend, seems to allege that the YCP's medical policies regarding the segregation of prisoners infected with tuberculosis was insufficient, and that as a result he contracted Tuberculin, a bacterial precursor to tuberculosis. (Doc. 1-1, p. 6). Based on his Complaint, it is unclear which Defendant Plaintiff

alleges was involved with regards to this claim.  In fact, Plaintiff does not allege the personal involvement of any Defendant with respect to his claim.  Also, Plaintiff admits that he was properly treated due to his exposure to Tuberculin.  Additionally, he does not allege that he developed active Tuberculosis while confined at YCP.  Regardless, we find that Plaintiff's stated allegations amount to a negligence claim, not a constitutional claim.  The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  *Iseley v. Beard*, 2009 WL 1675731, *7 (M.D. Pa.)(citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  In order to successfully raise an Eighth Amendment denial of medical care claim, a plaintiff inmate must allege that the defendant was deliberately indifferent to plaintiff's serious medical needs.  *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.) (quoting  *Monmouth Cty. Corre. Inst. Inmates v. Lanzaro*, 834 F. 2d 326, 346 (3d Cir. 1987)).

According to the Court in *Iseley v. Beard*, a prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of and disregards an excessive risk to inmate health or safety."  2009 WL 1675731, *7 (M.D. Pa.) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  According to the Supreme Court in *Estelle*, negligently diagnosing or treating a medical condition does not amount to an Eighth Amendment violation of an inmate's right to medical care/ treatment.  Estelle, 429 U.S. at 106.

Furthermore, the *Williams* Court stated:

A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. . . [I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the

medical need is of the serious nature contemplated by the Eighth Amendment.

2008 WL 4453100, *7 (M.D. Pa.)(citing *Monmouth Ct. Corr. Inst. Inmates*, 834 F.2d at 347); *see also Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008).

Additionally, according to the Court in *Robinson v. U.S.*, 2010 WL 1254277, *14 (M.D. Pa.):

> This [Eighth Amendment ] test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa.1996) (*citing Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)) (*quoting Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)). When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F.Supp. 542, 547 (M.D.Pa.1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro,* 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir.1990).

In *Whitely v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986), the Supreme Court stated that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment clause, ... ."  We find that Plaintiff's allegations that he contracted Tuberculin while at YCP only show that these Defendants may have made been negligent in screening and segregating prisoners.

Furthermore, in *Caldwell v Beard*, 324 Fed.Appx. 186, 188 (3d Cir. April 27, 2009), the

Third Circuit Court of Appeals stated, "[c]laims of negligence, without a more culpable state of mind, do not constitute 'deliberate indifference.' *See Singletary v. Pa. Dept. Of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir.2001)." Thus, since we find that Plaintiff's claim alleging that any Defendant caused him to contract Tuberculin amounts only to negligence, this claim is not actionable under § 1983. Accordingly, we find futility in allowing Plaintiff to amend as to this issue, and we recommend that this claim be dismissed with prejudice. *See Grayson, supra*.

### B. False Imprisonment Claim

In addition, we find that, to the extent Plaintiff is raising a false imprisonment/false arrest claim regarding the criminal charges filed against him in York County, he is *Heck* barred from raising such a claim. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

In *Heck*, the Supreme Court stated:

A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487. *See also Murphy v. Bloom*, 443 Fed.Appx. 668, 669 (3d Cir. 2011). A ruling on the legality of Plaintiff's York County arrest or imprisonment necessarily implicates the validity of his judgment of sentence in York County, which is currently being appealed before the PA Superior Court. Thus, Plaintiff 's York County criminal conviction has not yet been overturned and his false impressment claim clearly affects the validity of his stated conviction. As such, we will recommend

that the stated claim be dismissed at this time, as it is *Heck* barred until Plaintiff has his York County conviction overturned on appeal or via a habeas petition after he exhausts his state court remedies.

*5. York County Defendants*

Since Plaintiff names York County, York County Board of Commissioners, and the York County Prison Board as Defendants (collectively referred to as "York County Defendants"), the standards annunciated in *Monell* apply. (Doc. 1-1, p. 7). We find that Plaintiff has not stated a claim against York County Defendants under *Monell*. We also find that to the extent Plaintiff names York County Board of Commissioners and the York County Prison Board as Defendants in addition to York County, the former two Defendants are simply part of the County government itself and thus, the only proper Defendant is York County. *See Duffy v. Bucks County*, 7 F.Supp.2d 569 (E.D. Pa. 1998); *Debellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001); *Dennis v. Evans*, 2011 WL 900911 (M.D. Pa. 2011).

Plaintiff 's Complaint (Doc. 1-1, p. 7) fails to state a constitutional claim against Defendant York County under *Monell.* In Plaintiff's so-called "Brief in Support" of his Complaint, he acknowledges the requirements to state a proper claim against a county, yet he fails to state such a claim against York County in his Complaint. Although difficult to follow, Plaintiff's Brief appears to be attempting to premise York County's liability on the actions of the District Attorney. (Doc. 1-2, p. 6). Defendant York County is a municipality, and thus cannot be held liable, either for its conduct or for the conduct of employees in agencies within the county controls, such as the York County Prison Board, the York County District Attorney, or the York County Board of

Commissioners, pursuant to *respondeat superior. Brickell v. Clinton County Prison Bd.*, 658 F.Supp. 2d 621, 626-27 (M.D. Pa. 2009). In order for Plaintiff to successfully allege a constitutional claim under §1983 against Defendant York County, he must raise a *Monell* claim alleging that the County is a governmental entity and thus a "person" under §1983 and, alleging that either a policy or lack of policy of York County led to the violation of the Plaintiff's constitutional rights. *See Monell v. New York Dept. of Social Servs.*, *supra*; *see also Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587 (M.D. Pa. 2008).

In *Kokinda,* 557 F. Supp. 2d at 587, the Court stated:

> Under *Monell*, "municipalities and other local government units are among those "persons" to whom Section 1983 applies." *Malles v. Lehigh County*, 639 F. Supp. 2d 566, 576 (E.D. Pa. 2009). As the Court in *Malles v. Lehigh County*, 639 F. Supp. 2d at 576, stated:
>
> According to the teaching of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978), Lehigh County "can be sued directly under §1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell*, 436 U.S. at 690.

Therefore, in order to properly state a §1983 claim against York County, Plaintiff must not only allege that it qualifies as a governmental entity and thus is a person under §1983 standards, but Plaintiff must also must allege that York County unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of his constitutional rights. Plaintiff appears to argue that the decision by the York County District Attorney to detain him in YCP pending the appeal to the PA Superior Court constitutes a "policy"

30

under *Monell*, and thus makes York County liable. Based on *Kokinda* and *Malles*, we find Plaintiff's allegations do not sufficiently state that Defendant York County caused any alleged constitutional violation by having customs, policies, practices and procedures, and how these policies gave rise to the violation of his constitutional rights. Furthermore, as discussed above, we find that any challenge regarding Plaintiff's York County custody is *Heck* barred at the present time. *See Heck, supra*.

Also, we find that Plaintiff's municipal liability claim against Defendant York County under *Monell* fails since, as discussed above, Plaintiff failed to state a cognizable constitutional claim against any individual Defendant employed by the County. *See Deninno v. Municipality of Penn Hills*, 269 Fed.Appx. 153, 158 (3d Cir. 2008)("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution."). We will recommend, therefore, that Defendants York County, York County Board of Commissioners, and York County Prison Board be dismissed with prejudice from this case. Since the Plaintiff has failed to state a cognizable constitutional claim against any individual Defendant employed by York County, we find futility in allowing him to amend his Complaint as to the York County Defendants.

6. *Interstate Agreement on Detainers*

Plaintiff claims that Defendants violated his rights under the IAD and thus, beached a contract with him. (Doc. 1-1, pp. 3-5). Plaintiff alleges that after the York County Court dismissed the criminal charges against him on April 13, 2011, Defendants were required under the IAD to

send him back to Maryland to continue serving his Maryland sentence. Insofar as Plaintiff is raising a PA state law breach of contract claim, we will recommend that the Court decline to exercise pendent jurisdiction over it since we find that Plaintiff has failed to state any cognizable federal claim in his Complaint. Thus, since we shall recommend that Plaintiff's federal claims over which this Court has original jurisdiction (*i.e.*, his constitutional claims under §1983) not be permitted to proceed, we will also recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim against Defendants. *See* 28 U.S.C. § 1367(c)(3); *Verdecchia v. Prozan,* 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

Additionally, we again liberally construe Plaintiff's Complaint to also raise a claim for a Fourteenth Amendment due process violation as a result of the alleged breaches of the IAD's requirements. Therefore, it is necessary to discuss the function of the Interstate Agreement on Detainers Act further. *See Rockwell v. Sobina*, 2010 WL 5583816, *1 (W.D. Pa. 12-13-10).

In *Rockwell v. Sobina*, 2010 WL 5583816, *1, the Court stated:

> The IAD is a compact among 48 states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. It is a congressionally sanctioned interstate compact within the meaning of the Compact Clause of the United States Constitution, U.S. Const. Art. I § 10 cl. 3, and thus is a federal law subject to federal construction. *New York v. Hill,* 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (citations omitted); *Johnson v. Williams,* 666 F.2d 842, 844 n. 1 (3d Cir.1981) ("[T]he IAD has been held to constitute a law of the United States[.]") (citations omitted). It is codified in Pennsylvania at 42 Pa.C.S. § 9101 *et seq. See also Lewis v. Nelson*, 2007 WL 1575061, *1, n. 2 (E.D. Pa. 5-30-07)("the [IAD] is an interstate compact governing the procedures by which incarcerated persons may be transferred from one state's custody to another state's custody."). Pennsylvania is a party to

the IAD.  *Id.*

The Court in *Rockwell v. Sobina*, 2010 WL 5583816, *2, also stated:

> The IAD establishes procedures for member states to effect the expeditious and orderly disposition of out-of-state criminal charges pending against persons incarcerated in state institutions. In relevant part, it provides for the delivery of temporary custody of a prisoner to the receiving state for trial prior
>
> to the completion of a prisoner's sentence in the sending state. And, it seeks to minimize the consequent interruption of the prisoner's ongoing prison term and prevent prosecutorial abuses of the detainer that potentially allow a prisoner to languish in a separate jurisdiction under the constant but uncertain threat of further prosecution. IAD Art. I; *See, e.g., McCandless v. Vaughn,* 172 F.3d 255 (3d Cir.1999); *Cooney v. Fulcomer,* 886 F.2d 41 (3d Cir.1989).

The IAD provides at Article III(a) that:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, *and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner,* he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint. If the prisoner requests final disposition of those charges, then the receiving state must bring him to trial within 180 days of his request for disposition of the charges or dismissal of those charges will result. IAD Art. III(a)-(d).

Based upon his IAD claim and alleged violations of the IAD, Plaintiff is seeking pecuniary

compensation. Plaintiff further alleges that Defendants violated the terms of the IAD. According to *McIntosh v. Benish*, 2012 WL 3855127 (3d Cir. 2012), Plaintiff's IAD claim based on the alleged violation of his due process rights in not cognizable under § 1983. Additionally, Plaintiff's due process claim is legally baseless because a violation of the IAD is not an infringement of a constitutional right. *Cooney v. Fulcomer*, 886 F.2d 41, 46 n. 8 (3d Cir. 1988); *McIntosh v. Benish*, 2012 WL 3855127 (3d Cir. 2012).

As stated above, Plaintiff's claim is essentially challenging his prior, pre-trial detention in YCP, and, he alleges, "[e]ach month spent in Pennsylvania essentially has and does extends (sic) the amount of time the appellant/plaintiff must serve on his Maryland sentence by an additional 10 days, the resultant & actual damages has caused heightened anxiety as well as emotional distress to the appellant/plaintiff." (Doc. 1-1, p. 4). As mentioned, Plaintiff is currently back in Maryland serving his Maryland sentence. Plaintiff can certainly seek jail credit toward his York County June 20, 2012 sentence for the time he spent confined in YCP while his York County criminal case was pending through his sentencing until his July 2012 return to Maryland, as long as he does not receive credit for this time toward his Maryland sentence.

We find that even if Plaintiff states a violation of the IAD, such a claim is not a constitutional violation under 42 U.S.C. § 1983. The Court in *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) stated: "When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination  that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ

of habeas corpus." Thus, Plaintiff's sole federal remedy to challenge his pre-trial custody in YCP was a writ of habeas corpus under §2254, which he filed with this federal Court on June 2, 2011 (Civil No. 1:11-CV-1062). As stated above, Plaintiff 's §2254 habeas petition was dismissed by this District Court on August 28, 2012 (Civil No. 1:11-CV-1062, Doc. 26).

   7.   *Remaining State Law Claims*

Based upon our recommendation that all of Plaintiff's federal question claims be dismissed, we also recommend that the Court decline to exercise supplemental jurisdiction over any remaining state law claims Plaintiff is deemed to be raising in this case. *See* 28 U.S.C. § 1367(c). Thus, even if supplemental jurisdiction is found to exist in a case, "the discretion to exercise supplemental jurisdiction remains with the district court."*Greenwood,* 2003 U.S. Dist. LEXIS 18099, at 10, 2003 WL, 22238981. *N.J. Turnpike Auth. v. PPG Indus.,* 197 F.3d 96,113 (3d Cir.1999) (stating that a district court's decision to exercise supplemental jurisdiction over a plaintiff's state law claims is discretionary). Moreover, district courts should "hesitate to exercise jurisdiction over state claims" if the "considerations of judicial economy, convenience and fairness to litigants ... are not present...." *Id*.

Pursuant to the discretion granted to this Court by §1367, we will recommend that the Court decline to exercise supplemental jurisdiction over any remaining state law claims Plaintiff is deemed as raising in this case, as we find that the state court is the proper venue to hear such claims.

## V.    Recommendation.

Based upon the foregoing, it is respectfully recommended that Plaintiff Horne's Complaint (Docs. 1 & 1-1) be **DISMISSED** entirely with prejudice.  Furthermore, it is recommended that any remaining state law claims should be remanded to state court for further proceedings.  It is also recommended that Plaintiff 's *in forma pauperis* Motion (Doc. 6) be granted solely for the purpose of filing this action.

Finally, it is recommended that the Court close this case.


 **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: July 23, 2013**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COREY RICHARD HORNE,      :      CIVIL ACTION NO. **1:13 CV-1214**
                          :
          Plaintiff      :      (Chief Judge Kane)
                          :
            v.         :      (Magistrate Judge Blewitt)
                          :
JOHN & JANE DOES      :
OF YORK COUNTY, *et al.*,      :
                          :
                          :
          Defendants      :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 23, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *Defendant novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objection to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 23, 2013**